IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| S.H. and J.H., <br><br>             Plaintiffs, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE CO., CIGNA BEHAVIORAL HEALTH, the LOCKHEED MARTIN CORPORATION, and the LOCKHEED MARTIN CORPORATION MEDICAL BENEFITS PLAN, <br><br>             Defendants. | **MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Case No. 2:22-cv-552-TC |

On June 28, 2023, the court held a hearing on the Defendants' motion for summary judgment (ECF No. 24) and the Plaintiffs' motion for partial summary judgment (ECF No. 23). The parties' motions concerned the denial of medical benefits coverage for the treatment of Plaintiff J.H. at Evoke at Entrada (Evoke), in Santa Clara, Utah, and at Live Strong House (Live Strong), in Layton, Utah.[1]

The court, having reviewed the summary judgment briefs submitted by the parties and the administrative record filed in this action, having heard oral argument from counsel, and for the

---

[1] The Plaintiffs asserted their claims concerning the denial of coverage in the First Cause of Action of their Complaint.  (ECF No. 2 at ¶¶ 74–81.)  The Plaintiffs asserted two other causes of action: one for violation of the Mental Health Parity and Addiction Equity Act (id. ¶¶ 82–103); and one seeking statutory penalties for failing to timely provide documents required under ERISA (id. ¶¶ 104–108).  At a conference on March 23, 2023, the court directed the parties to brief only the coverage dispute issue in their summary judgment motions.

reasons discussed more fully below, GRANTS IN PART the Plaintiffs' motion for partial

summary judgment and DENIES the Defendants' motion for summary judgment.

## BACKGROUND

This action concerns a dispute under ERISA as it relates to the mental health care that

J.H., the son of Plaintiff S.H., received at Evoke from September 25, 2019, to December 18,

2019, and at Live Strong from December 18, 2019, to November 13, 2020.  Essentially, the issue

is whether the care J.H. received was a covered benefit under the applicable benefit plans or

whether, consistent with ERISA, the Defendants' denial of coverage was reasonable.

During the period when J.H. was receiving care at Evoke and Live Strong, J.H. was a

beneficiary of and S.H. was a member/participant in the Lockheed Martin Corporation Right Opt

Exchange Premier Plan (the Plan).[2]  The Plan was self-funded by Defendant Lockheed Martin

Corporation and claims under the Plan were administered by Defendants Cigna Health and Life

Insurance Company and Cigna Behavioral Health (together, Cigna).  (See AR 3863, 3917.)

Plaintiff S.H. sought coverage under the Plan for J.H.'s care at Evoke and Live Strong.

The Plan purports to provide some benefits coverage for the treatment of mental health

and substance abuse disorders.  Benefits may be available for inpatient services or on an

outpatient basis.  (See AR 3890, 3945.)  Generally, whether coverage is available depends on a

determination, under the specific terms of the Plan, that the care was "Medically Necessary."

(See, e.g., AR 3942 (providing that the term "Covered Expenses" means expenses incurred by or

on behalf of person covered by the Plan for "services or supplies that are Medically Necessary

---

[2] Two versions of the Plan are at issue here.  During the period when J.H. was receiving treatment at
Evoke the 2019 version of the Plan was effective.  (See Administrative Record (AR) 3860–3913 (stating
effective date of Jan. 1, 2019).)   And because J.H. received treatment at Live Strong from December 18,
2019, through November 13, 2020, both the 2019 version of the Plan and the 2020 version of the Plan
(see AR 3914–69) are applicable to the Live Strong claims.  The court notes here that the administrative
record is on the docket at ECF No. 37 and ECF Nos. 37-1–8.

for the care and treatment of an Injury or a Sickness, as determined by Cigna"); AR 3887

(similar); see also AR 3909–10, 3965 (defining "Medically Necessary").)

## ANALYSIS

A threshold issue in an ERISA denial of benefits action is the determination of the

standard of review to be applied.  In ERISA actions there are two: a de novo standard, which is

the default standard to be applied; or the arbitrary and capricious standard,[3] which is to be

applied if the plan at issue confers on the plan administrator the discretionary authority to

determine benefit eligibility.  Foster v. PPG Indus., 693 F.3d 1226, 1231 (10th Cir. 2012); Mark

M. v. United Behavioral Health, No. 2:18-cv-18, 2020 WL 5259345, at *7 (D. Utah Sept. 30,

2020).

Cigna argues the arbitrary and capricious standard should apply because the Plan

documents gave it discretionary authority to determine claims.  Cigna cites to section 3.1.2 of the

Lockheed Martin Corporation Master Welfare Benefit Plan to establish that the Plan granted it

discretionary authority to interpret and construe the terms of the Plan and determine whether any

benefits are payable under the Plan.  (See A.R. 4046.)  For their part, the Plaintiffs have not

challenged Cigna's claim that an arbitrary and capricious standard of review should apply.

Therefore, the court will review Cigna's claim denials under the arbitrary and capricious

standard.

In addition, in reviewing any claim brought to recover benefits due under an ERISA plan,

the court must determine whether the benefits sought are due under the terms of the plan.  See

---

[3] An "[a]rbitrary and capricious review of the reasonableness of a benefits decision considers if it (1) was the result of a reasoned and principled process, (2) is consistent with any prior interpretations by the plan administrator, (3) is reasonable in light of any external standards, and (4) is consistent with the purposes of the plan."  D.K. v. United Behavioral Health, 67 F.4th 1224, 1236 (10th Cir. 2023) (citation omitted); see also David P. v. United Healthcare Ins. Co., 77 F.4th 1293, 1308 (10th Cir. 2023) (asking whether the administrator's "interpretation of the plan was reasonable and made in good faith") (citation omitted).

J.W. v. Bluecross Blueshield of Tex., No. 1:21-cv-21, 2022 WL 2905657, at *2 (D. Utah July 22,

2022) ("'[I]f the benefits in question do not arise under the terms of the plan, the plaintiff has no

claim under this subsection.'" (quoting IHC Health Serv., Inc. v. Cent. States, Se. & Sw. Areas

Health & Welfare Fund, No. 2:17-cv-1327, 2018 WL 3756959, at *3 (D. Utah Aug. 8, 2018)).

Thus, as applicable here, if J.H.'s treatment at Evoke or Live Strong falls within an exclusion

under the Plan, then the Plaintiffs' claims for benefits are subject to dismissal.

### 1. Cigna's Review of J.H.'s Treatment at Evoke and the Plan's "Experimental" Treatment Exclusion

The Plan excludes benefits coverage in connection with "experimental, investigational or

unproven services." (AR 3896.) Under a "Complementary and Alternative Medicine" coverage

policy (the CAM Policy), which Cigna claims is applicable to the Plan, "wilderness therapy" is

one of the "therapies or treatments [that] is considered experimental, investigational or

unproven." (See AR 3750 (the CAM Policy), 3752 (listing wilderness therapy as experimental,

investigational, or unproven), 3774–76 (explaining wilderness therapy).) Cigna claims that

because J.H.'s treatment at Evoke was an experimental, investigational, or unproven "wilderness

therapy," summary judgment should issue in its favor.

The record, however, is decidedly unclear as to whether J.H.'s treatment at Evoke

constituted "wilderness therapy." For its part, Cigna cites to its own internal notes to claim that

J.H.'s mother stated on a phone call that J.H. was admitted to a "wilderness camp." (See AR

3970.) Cigna also quotes an email (which has not been made a part of the record) in which J.H.'s

mother canceled a meeting because "I will be traveling for a parent workshop with the

wilderness therapy program." (See AR 3972.) Cigna's internal reviewer also references Evoke's

website, which the reviewer claims "indicat[es] it is a wilderness or outdoor program." (See AR

4020.)  Cigna cites to no other record evidence to establish that Evoke was providing J.H. with "wilderness therapy."

But Cigna's internal notes on the Plaintiffs' appeal declared that "[t]here was no clinical information provided to indicate whether customer [J.H.] was able to participate in the wilderness program."[4]  (See AR 4019.)  And while Cigna's denial letters state that coverage "cannot be approved" because treatment for "Wilderness Therapy" falls within the exclusion for "experimental/investigational/unproven" services under the Plan's CAM Policy (see AR 3229–31 (Sept. 15, 2020, denial letter), 2391–93 (Feb. 10, 2021 denial letter)), the denial letters do not provide any evidentiary support for why that exclusion applies for the treatment J.H. actually received at Evoke.  As the Tenth Circuit has noted, insurers "ha[ve] the burden of showing that a loss falls within an exclusionary clause of the policy."  Pitman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291, 1298 (10th Cir. 2000).  Cigna has not done so.

The Plaintiffs asserted that the program at Evoke was an "Outdoor Behavioral Health" program that falls within the requirements of an "Other Health Care Facility" under the Plan for which benefits are covered.  (See AR 3088–97 (appeals letter dated Aug. 14, 2020).)  The Plaintiffs argue that Cigna did not engage with them during the denial process.  Plaintiffs submitted lengthy peer-reviewed reports and documents that they claim establish that wilderness therapy is not "experimental" (see AR 1895–1900 (referencing reports and professional

---

[4] The Plaintiffs have, at times, described J.H.'s treatment similarly.  For example, in their August 3, 2021, appeal on their Live Strong claims, the Plaintiffs informed Cigna that it was "[o]ur decision to send [J.H.] first to wilderness therapy at Evoke Entrada," and that treatment at Live Strong was "the most appropriate level of care for him after his discharge from a wilderness program."  (AR 3299, 3295.)  And, in a letter of medical necessity submitted by J.H.'s healthcare provider with that same appeal, it was noted that J.H.'s medical providers had urged J.H.'s parents "to proceed with enrolling [J.H.] in Wilderness Therapy Program," and that J.H.'s treatment team collaboratively decided that [J.H.] "would be best suited for a wilderness therapy program."  (AR 3314, 3316.)  Nevertheless, it remains unclear from this record whether J.H. received wilderness therapy, some other treatments, or a combination at Evoke.

opinions), 2173–2368 (compilation of peer-reviewed literature)), but that Cigna never responded to these submissions or addressed these concerns in its denials.  The Plaintiffs assert that this makes this case similar to the D.K. and David P. cases, which held that plan administrators act arbitrarily and capriciously when they fail to engage with an ERISA claimant's submissions or shut their eyes to information that could confirm an entitlement to benefits.[5]

The court agrees with the Plaintiffs.  Notably, even Cigna's CAM Policy acknowledges that the determination as to the efficacy of wilderness therapy is not static but is evolving. Specifically, in its discussion of wilderness therapy in the CAM Policy, Cigna states that "[a]dditional studies are needed to define a comprehensive and useful framework that is applicable to the general population and who the ideal candidates are for [wilderness therapy]." (AR 3830.)  This is not surprising given that the CAM Policy also acknowledges that wilderness therapy may be a useful therapeutic tool, noting that:

> [a] proposed advantage of [wilderness therapy] over conventional therapy is that the stigma of psychological therapy dissolves former resistance, making individual and group psychotherapy less intimidating and more natural.  The duration and context of the [wilderness therapy] treatment may provide the necessary time and space to address and process emotional upheaval, and stimulate personal issues to surface that have not been revealed in previous treatment settings.

(AR 3829 (citing academic sources).)

The CAM Policy also notes that: "[i]n ten of the 13 studies, intense social environments were assumed to contribute to positive outcomes.  Three studies reported that problem-solving activities would lead to feelings of success or mastery.  Seven studies reported that time in nature and pristine wilderness environments would provide a more effective setting for therapeutic

---

[5] D.K., 67 F.4th at 1237; David P., 77 F.4th at 1315.

healing to occur and asserted that time in nature was an active ingredient contributing to outcomes." (Id.)

Further, the CAM Policy cites a report on the efficacy of wilderness therapy that examined seven wilderness therapy studies. That report noted that the seven studies reported positive treatment outcomes, including:

> [D]espair was gradually replaced by self-confidence; the wilderness environment was a healing place and facilitated change; time alone allowed reflection and personal insight; avoidance of the "stigma" attached to mental health treatment; physical demands of the wilderness lifestyle contributed to the changes experienced including competence and sense of accomplishment; and enhanced self-awareness, self-efficacy; and socialization skills with therapists and peers.

(AR 3830.)

Indeed, courts in this district have recognized that the term "wilderness therapy" can include any number of behavioral treatments, noting that some wilderness therapy programs offer "clinical intervention in the form of traditional therapy, [and] other providers do not offer any clinical treatment." Amy G. v. United Healthcare, No. 2:17-cv-413, 2020 WL 3065414, at *4 (D. Utah June 9, 2020).

Against this backdrop, as well as the CAM Policy's own acknowledgment that wilderness therapy might be useful and effective (which is quite different than a conclusion that it is uniformly considered "experimental" or "unproven"), Cigna should have engaged with the information, studies, and assessments that Plaintiffs submitted on these issues in determining whether J.H.'s treatment at Evoke fell within the Plan's exclusions. Cigna did not do so. None of its denials mentions, yet alone engages with, Plaintiffs' submissions. Under D.K. and David P., this lack of engagement supports a determination that Cigna has acted arbitrarily and capriciously. See D.K., 67 F.4th at 1237 (concluding that, under ERISA, a plan administrator "cannot shut [its] eyes to readily available information" that could confirm entitlement to

benefits, and, if it does so, it has acted "arbitrarily and capriciously") (citation omitted); <u>David P.</u>, 77 F.4th at 1315 (concluding that claim administrators violated ERISA where they did not engage with the material submitted by plaintiff and did not explain why the treatment provided did not fall within the coverage available under the plan); <u>see also</u> <u>C.P. v. United Healthcare Ins. Co.</u>, No. 2:21-cv-378, 2023 WL 4108368, at *5 (D. Utah June 21, 2023) (noting that administrator had the obligation and "the burden of demonstrating the evidence to deny and exclude the claim").

In addition, a review of Cigna's denial letters establishes that Cigna's reviewers relied solely on the CAM Policy to support denial based on the Plan's exclusion for experimental or unproven services.  (<u>See</u> AR 3229 ("At the present time, per Medical Coverage Policy Complementary and Alternative Medicine (0086), this treatment falls under the category of experimental/investigational/unproven.  Your benefit plan does not cover experimental/investigational/unproven services."); AR 2392 ("At the present time, per Medical Coverage Policy Complementary and Alternative Medicine (0086), this treatment falls under the category of experimental/investigational/unproven.  Your benefit plan does not cover experimental/investigational/unproven services.").)

Under the express terms of the Plan, "[e]xperimental, investigational and unproven services are … treatments … that are determined by the utilization review Physician to be ... not demonstrated, through existing peer-reviewed, evidence-based, scientific literature to be safe and effective for treating or diagnosing the condition or Sickness for which its use is proposed." (AR 3896).

But the version of the Plan effective in 2019—during the period when J.H. was receiving treatment at Evoke—did not expressly allow the utilization review Physician to rely on any

"clinical coverage policies," such as the CAM Policy, to determine if a treatment was experimental or unproven.[6]   In fact, there is no provision anywhere in the 2019 Plan that expressly permits a reviewer to rely on Cigna's clinical coverage policies.[7]  This stands in contrast to the version of the Plan that was effective January 2020 (but was not effective when J.H. was treated at Evoke), under which a utilization review Physician may "rely on the clinical coverage policies maintained by Cigna" to determine whether any treatments are experimental, investigational, or unproven.[8]  (AR 3951.)  In other words, the 2019 Plan and the 2020 Plan are very different.

    As noted above, in its denial letters Cigna's reviewers never made any determination about whether J.H.'s treatment at Evoke was experimental, investigational, or unproven.  Rather,

---

[6] The 2019 Plan only allowed as follows: "In determining whether drug or Biologic therapies are experimental, investigational and unproven, the utilization review Physician may review, without limitation, U.S. Food and Drug Administration approved labeling, the standard medical reference compendia and peer-reviewed, evidence-based scientific literature." (AR 3896.)  There is no reference in the Plan that Cigna's reviewers may rely on clinical coverage policies in making that determination as to any other treatments.  This distinguishes the 2019 Plan from the plan at issue in Weiss v. Banner Health, 416 F. Supp. 3d 1178 (D. Colo. 2019), aff'd, 846 F. App'x. 636 (10th Cir. 2021).  In Weiss, the court concluded that a plan administrator had not acted arbitrarily and capriciously when it relied on a guideline that was not expressly identified in the plan.  416 F. Supp. 3d at 1186.  The court found that the guideline had been incorporated by reference in a disclosure that expressly informed participants that in determining whether a procedure was experimental or unproven, the administrator's review would include specific sources, including "[a]uthoritative medical literature," such as the guideline.  Id. at 1184–85, 1186; Weiss, 846 F. App'x. at 640.  As discussed herein, there is no similar disclosure in the 2019 Plan.

[7] Not surprisingly, the 2019 Plan does not cite the CAM Policy or incorporate it by reference.  As Cigna noted in its briefing, the CAM Policy did not become effective until "March 15, 2019."  (ECF No. 24 at 12; see also AR 3750 (listing effective date as 03/15/2019).)  But the 2019 Plan became effective on January 1, 2019, (AR 3860), months before the CAM Policy became effective.

[8] Similarly, when determining whether a treatment is "Medically Necessary" under the 2020 Plan, Cigna's "Medical Director or Review Organization may rely on the clinical coverage policies maintained by Cigna or the Review Organization.  Clinical coverage policies may incorporate, without limitation and as applicable, criteria relating to U.S. Food and Drug Administration-approved labeling, the standard medical reference compendia and peer-reviewed, evidence-based scientific literature or guidelines." (AR 3965.)  The 2019 Plan does not include this disclosure and does not inform 2019 Plan participants that Cigna's "clinical coverage policies," such as the CAM, may be used to determine medical necessity. (Compare AR 3909–10, with AR 3965.)

Cigna's reviewers only relied on the CAM Policy's purported determination that all wilderness therapy programs are experimental.  While that may (arguably) have been permissible under the 2020 Plan, it does not appear permissible under the 2019 Plan.[9]

Further, the Plan notes that in every adverse benefit determination or any determination on appeal, the denial or decision on appeal must provide "an explanation of the scientific or clinical judgment for a determination that is based on a Medical Necessity, experimental treatment or other similar exclusion or limit."  (AR 3904, 3906.)  Because Cigna did not provide Plaintiffs with any other analysis, justification, rationale, explanation, or determination made by a "utilization review Physician" as to why the treatment at Evoke was deemed an experimental treatment, it has not presented a sufficient or reasoned basis as to why J.H.'s treatment at Evoke was within the Plan's exclusion.

Under recent Tenth Circuit precedent, a decision to deny benefits shall be deemed arbitrary and capricious when the reviewer fails to explain how the conclusion was reached or when an administrator inappropriately relied on certain evidence while disregarding other evidence, or where the denial letter lacked reasoned analysis and relied on conclusory statements.  David P., 77 F.4th at 1315; D.K., 67 F.4th at 1237, 1240–41; C.P., 2023 WL 4108368, at *5, *8.  Here, Cigna's denials fail on all those points.  Absent reference to the CAM

---

[9] In fact, the CAM Policy reflects that it is the Plan language that controls.  (See AR 3750 (noting that "the terms of a customer's particular benefit plan document ... may differ significantly from the standard benefit plans upon which these Coverage Policies are based.  For example, a customer's benefit plan document may contain a specific exclusion related to a topic addressed in a Coverage Policy.  In the event of a conflict, a customer's benefit plan document always supersedes the information in the Coverage Policies.  In the absence of a controlling federal or state coverage mandate, benefits are ultimately determined by the terms of the applicable benefit plan document").)  Absent recognition of the CAM Policy in the Plan itself (which is not present), the CAM Policy cannot by its own terms make its provisions applicable to the Plan.

Policy, Cigna's denial letters contain no explanation as to how Cigna reached its decision, how it assessed Plaintiffs' evidence that the treatment J.H. received at Evoke was effective and proven, or any reasoned analysis for its unexplained conclusions.  The Plan required Cigna's utilization review Physicians to make a reasoned determination as to why the treatments J.H. received at Evoke were experimental and to explain those reasons to the Plaintiffs.  Because they did not do so, Cigna acted arbitrarily and capriciously.  See, e.g., David P., 77 F.4th at 1312–13 (finding administrator acted arbitrarily and capriciously by failing to support its denial of the claims with any stated reasoning); see also Michael D. v. Anthem Health Plans of Kentucky, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019) (finding administrator acted arbitrarily and capriciously when it failed to explain how wilderness exclusion applied) (citing Pitman, 217 F.3d at 1298).

Accordingly, the court denies Cigna's motion for summary judgment as it pertains to the claims for coverage for J.H.'s treatment at Evoke.  And because Cigna has not articulated any rationale for applying the exclusion, the Plaintiff's motion for partial summary judgment is granted in part.  But because the record here does not show clearly that the Plaintiffs are entitled to coverage under the Plan, the court is not in a position to award coverage benefits to the Plaintiffs.  Rather, remand is the appropriate remedy.  See David P., 77 F.4th at 1315 (stating that the proper remedy in such a situation is remand); C.P., 2023 WL 4108368, at *6 (same).  On remand, Cigna may not rely on any new rationales to deny the Plaintiffs' claim, but is instead limited to explaining, consistent with the Plan, ERISA, and this court's decision, why the Plan's experimental exclusion applies to J.H.'s treatments at Evoke.[10]   In addition, consistent with D.K.

---

[10] On this point, the administrative record establishes that Cigna has already determined that its own "Standards and Guidelines/Medical Necessity Criteria for Treatment of Mental Health Disorders," which reference "Wilderness Programs," are not applicable to its review of J.H.'s treatment at Evoke. Specifically, in its internal notes of February 4, 2021, Cigna's reviewer states: "The Cigna Standards and Guidelines/Medical Necessity Criteria for Treatment of Mental Health Disorders" were "N/A," or not applicable to the claim.  (AR 4023.)  This statement was confirmed in a February 10, 2021, internal

and <u>David P.</u>, Cigna must also meaningfully engage with any counter evidence or opinions presented by the Plaintiffs.[11]

### 2. Cigna's Evaluation of the Plaintiffs' Live Strong Claims

There appears to be some confusion about the Live Strong claims. Initially, the Plaintiffs sought pre-authorization for J.H.'s treatment at Live Strong under a "partial hospitalization program" benefit. Cigna appears to have correctly denied coverage on this claim because J.H. was not suffering from the impairments and serious threats of self-harm required by the Plan under this level of care. (<u>See</u> AR 2369–70 (finding the service "not medically necessary").) Plaintiffs raise no issue as to this denial.

J.H. was then stepped down to a lower level of care at Live Strong, called an intensive outpatient ("IOP") level of care. The Plaintiffs then sought coverage at the IOP level. Finding it was medically necessary, Cigna approved this coverage but would only pay at a lower level of reimbursement because Live Strong was an out-of-network provider. (<u>See</u> AR 2379 ("We'll cover it at the out of network level.").)

The Plaintiffs then sought a "network exception," seeking full reimbursement despite Live Strong's "out-of-network" status. On February 24, 2020, Cigna confirmed and approved the medical necessity for J.H.'s IOP level care but denied the requested network exception. (<u>See</u> AR 2404–05 (denying the exemption but stating that "the services [for IOP level care] have been

---

appeal note entered by a different Cigna reviewer. (AR 4029.) Having already administratively determined that those guidelines were not applicable, Cigna may not change course on remand. <u>See</u> <u>David P.</u>, 77 F.4th at 1316 (noting that remand "does not provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record") (citation omitted).

[11] Although <u>D.K.</u> and <u>David P.</u> addressed the requirement for a meaningful dialogue under ERISA in the context of a determination of medical necessity under a plan, the rationale behind these opinions applies equally to all types of denial determinations. <u>See, e.g.</u>, <u>C.P.</u>, 2023 WL 4108368, at *3–*7 (applying <u>D.K.</u> and the underlying district court decision in <u>David P.</u> to an administrator's denial based on an incorrect determination that a licensed residential treatment facility was not licensed).

determined to be medically necessary").)  Cigna instead informed the Plaintiffs that J.H could receive the IOP treatment at various in-network providers closer to where he lived, rather than in Utah.  (Id.)

On March 20, 2020, Cigna's reviewers again determined that J.H. "did meet Behavioral Health Medical Necessity Criteria for admission and continued stay at [IOP] level of care."  (AR 2477.)  But Cigna now informed Plaintiffs that it was going to deny the claim because J.H. was receiving his IOP care at a facility that was "either a partial hospitalization treatment program or a residential treatment program."  (Id.)  Cigna further noted that the care J.H. received at Live Strong was "inconsistent" with the ambulatory level of care that J.H. should have been receiving at an IOP level of care.  (Id.)

On February 8, 2021, Cigna informed the Plaintiffs that the services that J.H. received at Live Strong were "not covered."  (AR 2384.)   In this denial letter, which denied all coverage for J.H.'s treatment from December 18, 2019, through November 13, 2020, Cigna advised the Plaintiffs that it had reviewed coverage under a "Residential Behavioral Health Level of Care" criteria.[12]  (Id.)

The Plaintiffs appealed this determination noting that they had only requested IOP level coverage and not residential level coverage and that there was some confusion on the billing codes that were used.  (See AR 2504–32 (appeals letter dated Aug. 3, 2021).)   Specifically, Plaintiffs informed Cigna that its denial letter was based on a "Residential Behavioral Health

---

[12] Reading Cigna's denial letters together, it appears that Cigna refused to cover J.H.'s IOP claims because it believed J.H received his admittedly medically necessary care at a residential treatment center rather than at an IOP-type facility.  Given Cigna's acknowledgment of the medical necessity for J.H.'s treatment, Cigna's total denial of any coverage does not make sense.  No matter what, Cigna was only going to pay the IOP level rates, and at an out-of-network level, regardless of whether the treatment J.H. was receiving was more attentive and expensive.  Cigna's briefing does not address why it denied all coverage for care that Cigna had already determined three times was medically necessary.

Level of Care … [but] that this is <u>not</u> the level of care that was administered to [J.H.] while he was admitted to Live Strong House."  (AR 2506.)  The Plaintiffs also added medical necessity opinions from three of J.H.'s treatment providers (<u>see</u> AR 2524–31) and requested that Cigna "utilize the correct criteria that pertains to the level of care our son received at Live Strong House."  (AR 2507.)

On September 2, 2021, Cigna denied the Plaintiffs' appeal and upheld its prior denial. (<u>See</u> AR 3220–22 (appeal decision letter dated Sept. 2, 2021).)   Cigna devoted most of the denial letter to its view that residential treatment level of care was not medically necessary for J.H.  But, as noted, the Plaintiffs were only seeking IOP level of care coverage, which is a step down from residential care.  Nowhere in this denial letter does Cigna mention coverage under an IOP level of care.  Nor did Cigna's denial address the opinions of J.H.'s treatment providers or address the Plaintiffs' arguments that J.H was not receiving and was not seeking residential treatment level of care coverage.[13]

---

[13] Cigna's September 2, 2021, appeal denial letter also referenced a new rationale for upholding the prior denial: "As previously noted in the denial letter you received [i.e., the Feb. 8, 2021, letter], your plan does not cover therapeutic schooling/behavioral health supervised living for the treatment of ADHD, anxiety and depression because these procedures are considered educational in nature and not medically necessary."  (AR 3221.)  Cigna's statement is not accurate.  The prior February 8 denial letter did not inform the Plaintiffs that therapeutic schooling was not covered.  That denial only mentioned that "[t]he treatment setting reported is therapeutic schooling."  (AR 2384.)  And that denial nowhere mentioned "behavioral health supervised living."  Therefore, the September 2, 2021, appeal denial letter was the first time the Plaintiffs were informed of this determination.  In addition, the Plaintiffs had only one appeal available to them.  Cigna's inclusion of a new denial rationale in its response to the Plaintiffs' only appeal deprived the Plaintiffs of an opportunity to respond to the new rationale.  A "full and fair review" under ERISA requires more from Cigna.  Before any new denial rationale may be issued, a plan must provide a claimant with the rationale "as soon as possible and sufficiently in advance of the date on which the notice of final internal adverse benefit determination is required."  <u>See</u> 29 C.F.R. § 2590.715–2719(b)(2)(ii)(C)(2).  Cigna's belated denial rationale runs afoul of that requirement, particularly since Cigna then denied any further review of Plaintiffs' claim.  (<u>See</u> AR 2465–66 (rejecting the Plaintiffs' October 27, 2021, external review appeal request as an ineligible request for an external review.).)  On remand, Cigna is barred from relying on this rationale.

The Plaintiffs argue that Cigna ignored their submissions that J.H. was only receiving transitional and not residential care at Live Strong and that Cigna did not engage with J.H.'s treatment provider opinions.  In failing to do so, the Plaintiffs assert that Cigna acted arbitrarily and capriciously, and that remand is required so that Cigna can evaluate the Live Strong claims properly and use the correct standard.

After reviewing the record, the court agrees that remand is required.  First, Cigna appears to have evaluated the Plaintiffs' Live Strong claims utilizing a residential treatment level of care criteria rather than an IOP level of care criteria.  Second, Cigna's denials failed to engage with the materials and opinions presented by the Plaintiffs as to the appropriateness of J.H.'s care at Live Strong.  See David P., 77 F.4th at 1315 ("[I]n denying Plaintiffs benefits, UBH … failed to engage adequately with Plaintiffs.").  Indeed, none of the denial letters references or addresses the medical necessity letters submitted by J.H.'s treatment providers or addresses the Plaintiffs' concern—supported by J.H.'s medical providers—that J.H. needed to be treated in a facility that was far enough away from his home to avoid any relapse.

And finally, in both its February 8, 2021, and September 2, 2021, denial letters, Cigna informed the Plaintiffs that "[b]ased upon my review of the available clinical information and the MCG Behavioral Health Guidelines, medical necessity was not met for admission and continued stay at Residential Behavioral Health Level of Care, Child or Adolescent from 12/18/19-11/13/2020 ...."  (AR 2384, AR 3221.)  Cigna's express reliance on the MCG guideline appears to have been improper.  In fact, in its "Standards and Guidelines/Medical Necessity Criteria for Treatment of Mental Health Disorders," Cigna explains that it "has chosen not to adopt private, proprietary medical necessity criteria from companies such as McKesson Health Solutions or MCG, but to develop and implement our own."  (AR 3525, AR 3639 (emphasis added).)

Therefore, not only did Cigna review the Plaintiffs' Live Strong claims under an improper level of coverage standard, but it also reviewed the claims under medical necessity guidelines it had disavowed rather than its own guidelines.  Cigna therefore acted arbitrarily and capriciously.

## ORDER

Accordingly, based on the foregoing,

IT IS ORDERED that the Defendants' motion for summary judgment (ECF No. 24) is DENIED; and

IT IS FURTHER ORDERED that the Plaintiffs' motion for partial summary judgment (ECF No. 23) is GRANTED IN PART and DENIED IN PART; and

IT IS FURTHER ORDERED that this matter is REMANDED to the Defendants for further consideration consistent with this Decision and Order.

DATED this 8th day of December, 2023.

BY THE COURT:

Tena Campbell
United States District Judge